THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAMON CRUZ, Defendant-Appellant.

First District (3rd Division)   No. 77-1381

Opinion filed November 29, 1978.

Adam Bourgeois, of Chicago (Steven M. Levin and Allan A. Ackerman, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The defendant, Ramon Cruz, was charged with the murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1) of Julio Reyes. He was found guilty of the lesser included offense of voluntary manslaughter (Ill. Rev. Stat. 1975, ch. 38, par. 9—2), and not guilty of attempt murder of Officer Ronald Nally. Cruz was sentenced to the Department of Corrections for not less than two and not more than six years. The defendant contends that the court erred in failing to instruct the jury on the law of self-defense and also erred in denying the defendant's motion to dismiss the murder indictments where the grand jury transcript of proceedings shows that the only true bill returned was that of attempt murder and where the murder bill of indictment was not signed by the grand jury foreman.

Officer Ronald Nally testified that after completing his shift at 2:30 a.m. he left the district station in uniform in his own vehicle and proceeded home. Travelling on Clark Street, Officer Nally noticed four men arguing in front of the Los Latinos Tavern at the corner of Clark and Argyle. He testified that the defendant had a gun in his right hand.

As the officer made a U-turn, the four men proceeded to cross Argyle. Both Julio Reyes, the decedent, and Nertheline Reyes, his brother, were walking backwards, but Nertheline was directly in front of the decedent and had his hand on the defendant's chest. Eddie Echevarria was walking immediately behind the defendant. The defendant pushed Nertheline Reyes aside and shot Julio Reyes twice.

Nally was 30 feet from the men at the time of the shooting. As the defendant proceeded back to the corner, Nally left his automobile and positioned himself near its front left wheels so that the vehicle was between the defendant and himself. At that time he stated: "Police officer. Drop the gun." Nally dropped behind his vehicle with his head exposed and saw the defendant's hand jerk, but the gun did not fire. As he repeated "drop the gun," the defendant tossed the gun onto some grass. The officer directed the defendant to lie face down on the sidewalk and the defendant complied. Nally retrieved the gun. Nally also testified that there was a struggle going on between the defendant, the decedent and Nertheline Reyes at the time he saw and heard the two shots fired.

Nertheline Reyes testified that he saw Echevarria get a gun from a vacant lot next to the tavern. As Echevarria approached Julio with the gun, Nertheline grabbed Echevarria and told Echevarria to give the gun to him. Echevarria gave Nertheline the gun and stated he did not want Nertheline to use it on anybody. As Nertheline was about to throw the gun on a roof the defendant came along, grabbed him by the neck and took the gun away. At that time Julio was standing on the corner. As Nertheline saw the defendant going toward Julio, Nertheline got between them.

Nertheline further testified that the defendant fired two shots in the ground. Nertheline and the decedent were retreating north across Argyle when the defendant pushed Nertheline and shot the decedent twice.

The defendant called as a witness Sonia Rivera, the manager of the Los Latinos. She testified that the decedent and his brother arrived at the tavern about 4:30 or 5 o'clock in the afternoon. She had known the Reyes brothers for about eight years. During the evening the decedent went to the defendant's table and told the defendant to leave Sonia alone because she was the decedent's girl.

Rivera was the last person to leave the tavern that night. She saw Nertheline Reyes outside of the tavern with a gun tucked inside his pants and the handle showing. Nertheline told the defendant to come toward him and that if he wanted the gun to come and get it. The defendant said that he did not want any trouble and that all he wanted to do was to go home. Rivera turned and locked the door of the tavern and when she turned back Nertheline was pointing the gun at the defendant. The decedent was two feet away from the defendant. The defendant kept backing up and Nertheline called out to the decedent to "get on the

other side!" At this time Rivera came off the steps of the tavern and turned around. She saw that the defendant had hold of Nertheline's wrist and that the decedent had hold of the defendant's wrist. Nertheline had the gun and the defendant took it out of his hands and threw it. All three of the men ran for the gun. They started struggling and Rivera saw one shot go into the air and one into the ground. The defendant reached the gun first. Rivera walked across the street to her car. She heard two shots as she got into her car, but did not realize anyone had been hit by the gunfire. On cross-examination Rivera testified that Nertheline told the defendant "I'm going to kill you, I don't like you." She was asked what the defendant did to start the struggle and replied that "he put his hands on Nertheline's wrist." Both Nertheline and the decedent had a hand on the defendant when the shots went off.

Eddie Echevarria testified that immediately after leaving the tavern Netherline put the gun to the chest of the defendant. The defendant grabbed the arm of Nertheline and the victim intervened.

The defendant testified that he joined Echevarria and another person for a drink when he arrived at the bar. While there, he noticed that the Reyes brothers were angry at him. The decedent told the defendant that Sonia Rivera was his girlfriend and that the defendant should leave her alone. The defendant was surprised when he first saw the gun in the hands of Nertheline outside of the bar. Nertheline was pointing the gun at him and told the defendant that "he was going to kill me and saying obscene things." The Reyes brothers were coming toward the defendant when he started to walk backwards toward the corner. The defendant stated he was trying to make peace in telling them that he did not want to fight. He felt that they were going to try to kill him and he tried to avoid this by grabbing the hand with which Nertheline held the gun. He was able to get the gun and he threw it several feet away. When the Reyes brothers ran to retrieve it, the defendant tried to get to it before they did. The defendant got the gun again and a struggle ensued with both brothers on top of him. During the struggle the gun went off. About a second later, as the struggle continued two more shots went off and the decedent was struck. The defendant then walked across to the bar. About eight or 10 minutes later the police arrived and the officer said that he should throw the gun down. The defendant let go of the gun.

The defendant argues his tendered instruction on self-defense should have been submitted to the jury. He contends that the jury should be instructed on any defense which has some foundation in the evidence, and that this is true even if the facts on which the defense is based are inconsistent with the defendant's own testimony. The People argue that the jury was instructed correctly because no evidence of self-defense was presented at the trial.

■■ In *People v. Looney* (1977), 46 Ill. App. 3d 404, 410, 361 N.E.2d 18, 22,

the court noted "[a] defendant in a criminal case is entitled to have the jury instructed on any legally recognized defense theory which has some foundation in the evidence, however tenuous." (See also *People v. Kalpak* (1957), 10 Ill. 2d 411, 140 N.E.2d 726.) Furthermore, whether the asserted defense is based upon testimony of the State's witnesses, or those of the defendant is irrelevant. *People v. Gajda* (1967), 87 Ill. App. 2d 316, 232 N.E.2d 49; *People v. Hill* (1977), 53 Ill. App. 3d 280, 368 N.E.2d 714.

The fact that the defendant may have denied any intention to commit the act is also irrelevant. (*People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1.) And the courts have indicated that it is perfectly proper to charge the jury with inconsistent defenses so long as the facts and nature of the case support the feasibility of either. *People v. Landry* (1977), 54 Ill. App. 3d 159, 368 N.E.2d 1334.

The issue here is whether there was evidence presented which would support a self-defense instruction.

The defendant testified that when he first saw Nertheline Reyes with the gun he was surprised, and that Nertheline was pointing the gun at him and saying he was going to kill the defendant. He testified that the Reyes brothers pursued him with the gun and that "I figured they were going to kill me * * * ." He also testified that when he threw the gun away the Reyes brothers ran to get it and that he "understood that they had the intention of killing me. If one of them grabbed the gun they were going to kill me." Additionally, Officer Nally testified that a struggle was going on at the time he saw and heard the shots fired.

■ There was evidence from which the jury could infer that the defendant did the shooting. It also could have inferred from the circumstances surrounding the shooting and from the defendant's testimony, as set forth above, that the Reyes brothers intended to kill the defendant and that he was acting in self-defense when he did the shooting. The defendant was thus entitled to an instruction on self-defense.

The defendant also argues that the grand jury indictments should be dismissed because the only bill of indictment signed by the grand jury foreman charges the defendant with attempt murder. The murder bills of indictment do not contain the foreman's signature as required by section 111—3(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—3(b)). The defendant also complains that the murder indictments do not contain the name of Officer Nally, upon whose testimony the indictments are based, in violation of section 17 of "An Act concerning jurors." (Ill. Rev. Stat. 1975, ch. 78, par. 17.) The State responds that a true bill was returned on both the murder and attempt murder charges and that the defendant is essentially complaining of technical defects without any showing that a substantial right of his has been infringed.

The only case cited by the defendant in his argument that the indictments should be dismissed is *People v. Lawson* (1977), 67 Ill. 2d 449, 367 N.E.2d 1244. In *Lawson*, the Illinois Supreme Court held that preindictment delays did not amount to a due process violation where the defendants were able to show only the possibility of prejudice, and that a trial court has the inherent authority to dismiss an indictment based on a due process violation for reasons other than those set forth in the applicable statute if actual and substantial prejudice is shown. We find this case inapposite here. The defendant has not shown any prejudice resulting from the defects in the indictments.

■■ In *People ex rel. Merrill v. Hazard* (1935), 361 Ill. 60, 196 N.E. 827, the supreme court noted that the signature of the grand jury foreman "is required only as a matter of direction to the clerk and for the information of the court; [and] that its presence or absence does not materially affect any substantial right of the defendant * * * ." 361 Ill. 60, 63. We agree with this assessment, and believe that the requirement in the statute that "[a]n indictment shall be signed by the foreman of the Grand Jury * * * " is not a prerequisite to a valid indictment. See also *People ex rel. Byrd v. Twomey* (1972), 2 Ill. App. 3d 774, 277 N.E.2d 358.

■■ The absence of a list of witnesses on the face of the murder indictments, as required by section 17 of "An Act concerning jurors" (Ill. Rev. Stat. 1975, ch. 78, par. 17), was without prejudice to the defendant. The attempt murder indictment did contain Officer Nally's name as a witness. The defendant had possession of the grand jury testimony of the State's key witness, Officer Nally, prior to trial and also was given a list of witnesses which included Officer Nally's name.

■■ ■ The basic due process requirement concerning the form of an indictment is that it must "apprise the defendant of the precise offense charged with sufficient specificity to enable him to prepare his defense and allow the pleading of the judgment as a bar to future prosecution arising out of the same conduct." (*People v. Gilmore* (1976), 63 Ill. 2d 23, 28-29, 344 N.E.2d 456.) The defendant had sufficient notice of the charges against him and raises no complaint of prejudice resulting from the form of the indictments. We find nothing to justify the extreme step of dismissing these indictments.

Because the defendant was entitled to have the jury instructed on self-defense, we reverse and remand for a new trial.

Judgment reversed and remanded.

SIMON and McGILLICUDDY, JJ., concur.