THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TEEN BUCHANAN, Defendant-Appellant.

Fourth District    No. 16389

Opinion filed December 12, 1980.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

A jury found the defendant guilty of murdering Carl Ricks; the defendant was sentenced to 20 years' imprisonment.

As framed by the parties, the only issue on appeal is a narrow one—whether the trial court erred in barring the defendant's testimony that he knew of Ricks' two convictions for crimes indicative of violent character. The question here actually extends beyond this limited formulation, however, as defense counsel's offers of proof and argument at trial show.

The testimony of several witnesses, made outside the jury's presence, established that Ricks was convicted in 1963 for armed robbery, and in 1975 for unlawful use of a weapon and carrying a concealed weapon. Also as an offer of proof, one witness testified that Ricks was able to remove a knife from his pocket and open it quickly, and that once Ricks had pulled a knife on him; the parties stipulated that a Decatur police officer would testify, for an offer of proof, that Ricks was carrying a knife when arrested once.

A review of the record shows that defense counsel's main concern was to inform the jury of Ricks' two convictions and the business about the knife, independent of the defendant's knowledge.

The State argues that the issue of self-defense was never raised at trial and therefore Ricks' character and reputation were irrelevant. All the witnesses agree that the fight began with an argument between the

defendant and Ricks over car keys and ears of corn. According to the defendant, he was in his car, ready to leave the scene, when Ricks walked over and asked for more corn; Ricks, the defendant, and several other persons had divided a batch. Ricks then told the defendant to do what he was told and grabbed the keys from the ignition; Ricks refused to return the keys and threatened to harm the car, shoving the gearshift. The defendant knocked Ricks' hand from the shifting lever, and Ricks then grabbed the defendant around the neck and started to pull him out of the car. After the defendant had escaped from his hold, Ricks told the defendant that he would cut him up. The defendant then retrieved his keys and went to the trunk of the car, where he knew Ricks' gun was kept, and loaded the weapon. The defendant first shot over Ricks' head, and Ricks, with his hand in a rear pocket, rushed toward the defendant. The defendant knew that Ricks always carried a knife and thought that Ricks was going to kill him. The two men then struggled over the gun, which discharged several times; Ricks died as a result.

■■ ■ Although contradicted in several respects, the defendant's testimony shows Ricks to have been the initial aggressor. Although a defendant's testimony that death resulted from a struggle for a weapon may help negate his claim on appeal that self-defense was shown conclusively at trial (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Jersky* (1941), 377 Ill. 261, 36 N.E.2d 347), that testimony does not justify a trial court in refusing to admit evidence of self-defense or to instruct on voluntary manslaughter and self-defense (*Joyner; People v. Cruz* (1978), 66 Ill. App. 3d 760, 384 N.E.2d 137). A conviction for voluntary manslaughter may be reversed on appeal even when the defendant has testified to a struggle. (*People v. Goodman* (1979), 77 Ill. App. 3d 569, 396 N.E.2d 274.) Even though the shooting occurred during and as a result of the struggle and was in that sense accidental, the preceding events could place the shooting in the context of self-defense.

The trial court sustained the State's objections to all the evidence adduced in the offers of proof and granted the State's motion *in limine* to prevent the defendant from testifying to his knowledge of Ricks' criminal record. The State now argues that because the defendant's knowledge was not demonstrated to the trial court through an offer of proof, the defendant has waived the issue. This argument misconstrues the purpose of the offers of proof made at trial and confuses the requirements for admitting evidence of the deceased's character. This testimony should have been allowed; moreover, the defendant's knowledge of the convictions is irrelevant and unnecessary.

■■ When self-defense is raised, a common issue is the use of evidence regarding the reputation or character of the deceased. Many of the cases discussing the admissibility of testimony concerning the deceased's repu-

tation and character fail to distinguish two different and independent purposes for which the testimony may be offered. (Annot., 1 A.L.R.3d 571, 601 (1965).) One purpose of the testimony may be to show the reasonableness of the defendant's state of mind in acting in self-defense; a second purpose may be to support the defendant's testimony that the deceased was the aggressor. (*United States v. Burks* (D.C. Cir. 1972), 470 F.2d 432, 434-35.) These distinct purposes serve different functions and carry different requirements as to the defendant's knowledge of the deceased's character and reputation. (1 Wigmore, Evidence §63 (3d ed. 1940); Annot., 1 A.L.R.3d 571, 575-76 (1965).) When used for the first purpose, the defendant must have known the information concerning the deceased when the act of self-defense occurred. This requirement is entirely correct, flowing from the subjective use to which the testimony is put—supplying insight into the defendant's state of mind and his beliefs regarding the danger he was in. A requirement that the defendant knew of the deceased's propensity for violence is unrelated to the second purpose, however. Evidence that the victim was a violent person or committed violent acts helps corroborate the defendant's testimony that the deceased was the initial aggressor; the defendant's lack of knowledge concerning the deceased's reputation for character does not affect the relevancy of evidence offered for this purpose.

Character and reputation are distinct—character pertains to what one actually is, and reputation concerns what one is thought to be. (*People v. Hicks* (1935), 362 Ill. 238, 243, 199 N.E. 368, 370.) Character is shown by proof of specific acts, and when the deceased's character is being proved to support a claim of self-defense, acts of violence are admissible. *People v. Baer* (1976), 35 Ill. App. 3d 391, 396, 342 N.E.2d 177, 181-82.

Many decisions in Illinois focus on only the first purpose and therefore do not serve as authority regarding the second. "[T]he law in Illinois still requires the exclusion of evidence of a victim's propensity for aggression unless the accused knew the victim had that trait." (*People v. Wolski* (1980), 83 Ill. App. 3d 17, 30, 403 N.E.2d 528, 538.) *People v. Davis* (1963), 29 Ill. 2d 127, 193 N.E.2d 841, found reversible error where a trial court had excluded the defendant's testimony concerning an earlier fight between him and the deceased. This testimony pertained to the first purpose—showing the defendant's state of mind—and was "admissible as tending to show the circumstances confronting the defendant, the extent of his apparent danger and the motive by which he was influenced." (29 Ill. 2d 127, 130, 193 N.E.2d 841, 843.) Similarly, *People v. Stombaugh* (1972), 52 Ill. 2d 130, 284 N.E.2d 640, found error where the defendant had been prevented from testifying to his state of mind when he shot the deceased.

Thus, when the different purposes are kept firmly in mind, the

reasoning in cases such as *Stombaugh* and *Davis* becomes evident, and these decisions are not limits on the use of the evidence suggested in this case.

■■ We recognized in *People v. Jones* (1976), 37 Ill. App. 3d 879, 346 N.E.2d 389, the second purpose, and the admissibility of evidence pertaining to that purpose. We thus decline to follow *Wolski*, which extrapolated from *Stombaugh* and *Davis* a rule requiring the exclusion of information, unknown to the defendant, concerning the deceased and offered for the second purpose. Although erroneous, the exclusion of evidence here was harmless. First, the trial court admitted substantial evidence concerning Ricks' reputation for violence and the defendant's own reputation for being peaceful and law-abiding; the evidence on Ricks included testimony from witnesses identified in court as policemen and lawyers. Second, the trial court instructed the jury on the lesser-included offense of voluntary manslaughter and self-defense. The excluded evidence was essentially cumulative.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.