THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD EVERETTE, Defendant-Appellant.

First District (3rd Division)   No. 1—87—1978

Opinion filed June 14, 1989.

896

McNAMARA, J., dissenting.

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, and Rosenthal & Schanfield, both of Chicago (Robert R. Tepper, Andrew J. Katlin, John S. Delnero, Nancy Grant, Glenn E. Heilizer, and David G. Spak, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund and Patricia Y. Brown, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Donald Everette, was convicted by a jury of murder in the circuit court of Cook County. The trial court sentenced him to 24 years' imprisonment. He appeals.

At defendant's trial, Edward Jeffries testified to the following when called as a witness for the State. On November 1, 1985, at approximately 10 p.m., Jeffries, the victim, Johnny Island, and an individual named Donnell were drinking a six-pack of beer near the mailboxes on the first floor of a public housing building at 3835 South Federal in Chicago. While the three men were near the mailboxes, defendant approached the building and went to the mailbox area. When defendant did so, the victim moved away from him to the other side of the mailboxes. When he moved away, Island teased defendant about a "prior incident that happened to him." Defendant then told Island that, if defendant wanted to, he could get Island. Island then walked up and called defendant's name. Defendant ignored Island and walked away toward a ramp leading to apartments in the project.

Approximately five minutes later, defendant came down the ramp and started running toward the three men. Jeffries told Island that defendant was coming and Island started to run away. When defendant reached the area of the mailboxes and while Island was still running away, defendant pulled out a black revolver. Island slipped while turning the corner of the wall containing the mailboxes and Jeffries heard a shot. When Island slipped, he was 7 to 10 feet away from defendant. When defendant fired the gun, he had both arms straight out in front of him pointing at Island's back. After defendant had fired the shot, Jeffries asked him why he had shot at Island. Without responding, defendant walked past Jeffries and Donnell toward the ramp.

Defendant testified on his own behalf. He testified that he went to

his mailbox upon arriving at his building on the night of the shooting. At that time, he heard Jeffries say, "There he is." After closing his mailbox and removing three letters, defendant heard Island say, "We aren't going to start nothing, cause that is over with." Defendant knew what Island was talking about. Defendant testified that, in June 1985, Island hit him over the head with a Coca-Cola bottle when defendant attempted to intercede in an argument between Island and the stepdaughters of a friend of defendant. Defendant also testified that, in August 1985, he was waiting for a bus when Island walked up to him and apologized in a sarcastic tone for hitting him in June. While apologizing, Island circled defendant with a gallon wine container in his hand.

Defendant further testified that when he started toward his apartment after getting his mail, he was met by Island, Jeffries and a third person. Defendant continued toward his apartment while the three men attempted to go through his pockets. After defendant got into his apartment, he noticed that two of the three letters were not for him. Eventually, defendant decided to go out for something to eat. Before leaving his apartment with the two misdirected letters, defendant decided to take his pistol with him because the three men might still be downstairs.

When defendant arrived downstairs, he went to the mailbox to deposit the two letters. At that time, Jeffries said "[T]here he is again," and Island asked in a loud tone, "What are you doing back down here?" Defendant turned in Island's direction. Defendant saw the silhouette of a person he identified as Island from the voice. Island had his arm in a striking position, *i.e.*, slightly behind the body at about a 45-degree angle and at waist height, while holding a can or other object. Defendant believed that Island was going to strike him. Defendant formed this belief because of Island's conduct toward him, Jeffries saying "Hit him, hit him," and because Island had struck him in the past. At that point, defendant pulled out his pistol, pointed in Island's direction and cocked it. Defendant denied any intent to shoot Island at that time, stated that he pulled the pistol because he was "frightened and scared," and claimed that he pulled it "just to scare" Island. Defendant further testified that as he cocked the pistol, he took two steps back. As he took the first step back, he saw Island turn. As he took the second step back, his right shoulder bumped the mailboxes, which caused the pistol to go off.

On cross-examination, defendant characterized his first encounter with Island and Jeffries as a "brief argument." He further claimed that he pulled the gun on Island because of fear for his life.

The State also introduced evidence of a question and answer statement which defendant made to an assistant State's Attorney after the shooting. The statement substantially corroborated defendant's testimony regarding the sequence of events leading up to the shooting of Island. However, there was no mention in the statement of the fact that defendant left his apartment to buy something to eat, in addition to returning two misdirected letters to his mailbox. Nor was there any mention in the statement that defendant took his pistol with him for his protection. Finally, there was no mention in the statement that defendant shot Island accidentally. In addition to introducing the statement in its case in chief, the State used the statement to impeach defendant's testimony on these three latter points.

OPINION

On appeal, defendant first contends he was not proved guilty beyond a reasonable doubt. Specifically, he asserts that the testimony of Jeffries, the State's only occurrence witness, was incredible because the facts "suggest" that Jeffries was intoxicated at the time of the shooting. Defendant further likens Jeffries to a narcotics addict, whose testimony must be closely scrutinized. See, *e.g., People v. Galloway* (1974), 59 Ill. 2d 158, 319 N.E.2d 498.

■ We find the "suggestion" in the record of Jeffries' intoxication at the time of the shooting wholly insufficient to render his testimony incredible and, therefore, to raise a reasonable doubt of defendant's guilt. Nor is there any evidence in the record that Jeffries habitually used or abused alcohol. As such, there is no record basis for defendant's comparison of Jeffries to a narcotics addict. Thus, neither the trial court nor jury was required to scrutinize his testimony as closely as that of a narcotics addict.

Defendant also asserts that he was not proved guilty beyond a reasonable doubt because the State improperly introduced into evidence a gun which was similar to that with which defendant shot Island. The gun actually used in the incident had been inadvertently destroyed by the State.

We do not agree. *People v. Seals* (1987), 153 Ill. App. 3d 417, 505 N.E.2d 1107, dealing with exactly the same issue, is dispositive of defendant's claim. Therein the court stated:

> "Demonstrative evidence can be used to make other testimony more understandable. [Citation.] If it provides a visual aid for the jury, it should be used for factual explanation, not dramatic effect. [Citation.] The use of demonstrative evidence is within the discretion of the trial court." *Seals*, 153 Ill. App.

3d at 423.

■ Like the *Seals* defendant, defendant here admitted firing the gun that caused the death and his defense was based on a theory of self-defense. Also, as in *Seals*, the jury was told that the gun demonstrated at trial was not the gun used in the shooting. Comparably to *Seals*, the gun was used briefly during the testimony of a police officer and by the prosecutor in closing argument but was not permitted to go to the jury. In view of the limited use of the similar gun, we cannot say that the trial court abused its discretion in admitting it into evidence. *Seals*, 153 Ill. App. 3d at 424.

Defendant next asserts that the State did not prove him guilty beyond a reasonable doubt because it did not disprove beyond such a doubt that he shot Island accidentally while acting in self-defense. The State responds that defendant failed to adequately raise the affirmative defense of self-defense so as to require it to disprove the claim beyond a reasonable doubt. The State relies on defendant's testimony that he did not intend to shoot anyone and that he shot Island accidentally.

■ The defense of self-defense is statutorily codified in section 7—1 of the Criminal Code of 1961 (the Code), which provides, in relevant part:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself *** against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself ***." (Ill. Rev. Stat. 1985, ch. 38, par. 7—1.)

Self-defense as provided for under section 7—1 is an affirmative defense which, once raised, the State must disprove beyond a reasonable doubt. (*People v. Estes* (1984), 127 Ill. App. 3d 642, 651, 469 N.E.2d 275.) Moreover, the defense is raised by a slight amount of evidence. *People v. Bratcher* (1976), 63 Ill. 2d 534, 540, 349 N.E.2d 31; *People v. Daily* (1979), 79 Ill. App. 3d 928, 939, 398 N.E.2d 923.

■ Preliminarily, we believe that defendant's testimony of the sequence of events preceding the fatal shooting of the victim adequately raised the issue of self-defense. Specifically, we note defendant's testimony that he pulled his gun because he perceived Island standing with his arm in a striking position while holding a beer can or some other object, that Jeffries had said to Island, "Hit him, hit him," and that he, defendant, was scared at this time. We believe that the facts

and circumstances of this case adequately established, contrary to the dissent's conclusions, that defendant could have subjectively believed that Island posed a threat to him and that he, therefore, adequately raised the issue of self-defense.

■ In this regard, we do not believe that a defendant must testify *in haec verba* that he actually believed that it was necessary to use force in order to raise the defense of self-defense. Rather, we believe that a defendant raises the defense where his testimony and any other evidence relevant thereto is sufficient to allow the trier of fact to infer *whether* he actually believed in the necessity to use the force he did. "So long as some evidence is presented from which a jury could conclude that defendant had a subjective belief [that the use of force was necessary], *the jury* should determine *if the belief existed.*" (Emphasis added.) (*People v. Lockett* (1980), 82 Ill. 2d 546, 553, 413 N.E.2d 378.) That requirement for raising, as opposed to proving, the defense was met here.

■ Defendant's testimony that he was legally blind, which was unrebutted by the State, could also properly be considered by the jury in determining whether Island presented a threat to defendant. In *People v. Estes* (1984), 127 Ill. App. 3d 642, 651, 469 N.E.2d 275, the court noted, *inter alia,* that the test of self-defense claims is whether the facts and circumstances would induce a reasonable apprehension of serious bodily harm in light of the defendant's perception of the situation at the time he employed force against his aggressor. The court then considered the fact that the defendant had extremely poor vision as a factor in determining whether the State had disproved her claim of self-defense beyond a reasonable doubt. *Estes,* 127 Ill. App. 3d at 652.

■ Unlike the dissent, we cannot say that Island's conduct could not have created a fear of imminent death or great bodily harm *in defendant* as a matter of law. In the context of self-defense, it is the defendant's perception of danger, not the actual danger, which is dispositive. (*People v. Sawyer* (1986), 115 Ill. 2d 184, 193, 503 N.E.2d 331, *cert. denied* (1987), 482 U.S. 930, 96 L. Ed. 2d 702, 107 S. Ct. 3216.) Finally, in addition to determining whether a defendant actually believed in the necessity of using force where some evidence is presented from which a jury could make that determination, it is also for the jury to determine whether the belief was reasonable or unreasonable. *People v. Lockett* (1980), 82 Ill. 2d 546, 553, 413 N.E.2d 378.

Next, we disagree with the State that defendant's lack of an intent to shoot Island and his claim of accidental shooting precluded a claim of self-defense as a matter of law. (*People v. Robinson* (1987),

163 Ill. App. 3d 754, 516 N.E.2d 1292; *People v. Whitelow* (1987), 162 Ill. App. 3d 626, 515 N.E.2d 1327; *People v. Brooks* (1985), 130 Ill. App. 3d 747, 474 N.E.2d 1287; *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 414 N.E.2d 262; *People v. Cruz* (1978), 66 Ill. App. 3d 760, 384 N.E.2d 137.) We also find unavailing the State's reliance on *People v. Chatman* (1981), 102 Ill. App. 3d 692, 430 N.E.2d 257, in conjunction with defendant's claims of lack of intent and accident, as necessitating a conclusion that defendant's claim of self-defense was disproved beyond a reasonable doubt. *Chatman* held that it is unreasonable for an armed defendant to believe that an unarmed victim who had turned his back and was walking away poses an imminent threat of death or great bodily harm so as to justify the use of force against him. *People v. Chatman* (1981), 102 Ill. App. 3d 692, 700, 430 N.E.2d 257.

■ In merely relying upon *Chatman*, the State ignores that this case, unlike *Chatman*, involved a claim that, although the defendant engaged in acts of self-defense, the injury he was accused of inflicting was actually the result of an accident. (See generally *People v. Robinson* (1987), 163 Ill. App. 3d 754, 516 N.E.2d 1292.) Moreover, it has been held, in contradistinction to *Chatman*, that the law does not require that the aggressor be armed in order to justify the use of a deadly weapon in self-defense. (*People v. Estes* (1984), 127 Ill. App. 3d 642, 651-52, 469 N.E.2d 275.) Rather, where it is clear that the aggressor is capable of inflicting serious bodily harm on the defendant without the use of a deadly weapon, and it appears that he intends to, then it is unnecessary for the aggressor to be armed for the defendant to employ deadly force in self-defense. *Estes*, 127 Ill. App. 3d 642, 469 N.E.2d 275.

■ Thus, the facts that Island was not armed with a deadly weapon and was walking away when he was shot, and that defendant claimed the shooting was accidental, do not require the conclusion that defendant's claim of self-defense was disproved beyond a reasonable doubt. Rather, the State had the burden of adducing evidence to disprove defendant's claim of self-defense beyond a reasonable doubt. This the State did not do. As such, we cannot say that defendant was proved guilty of the offense of murder beyond such a doubt.

This conclusion brings us to defendant's next contention on appeal. Relying on *People v. Robinson* (1987), 163 Ill. App. 3d 754, 516 N.E.2d 1292, defendant contends that the trial court erred in refusing tendered instructions on self-defense and voluntary manslaughter on the ground that defendant's claim that he accidentally shot Island precluded him from asserting the affirmative defense of self-defense.

In *Robinson*, the trial court refused to instruct the jury on self-defense and voluntary and involuntary manslaughter. The trial court held that the defendant's defense that the shooting was accidental precluded a claim of voluntary manslaughter and self-defense. In a thoroughly researched opinion, the *Robinson* court found that the trial court erred. The court first noted the split of authority over the propriety of self-defense instructions when a defendant testifies that a homicide or battery was accidental. The court noted that courts that rejected self-defense instructions, where the defendant claimed accident, did so partly on the basis of a conflict between the two defenses. However, the court found that in those cases no self-defense was actually shown on the facts, thus justifying no instruction thereon that could contradict an accident theory in the first place. *Robinson*, 163 Ill. App. 3d at 762.

The court reasoned that the split of authority could be explained by differences among the cases as to whether the defendants claimed: (1) that all of their acts immediately preceding the injury at issue were accidental or nonforcible; or (2) that the acts preceding the injury inflicted were intentionally forcible and self-defensive but that the injury was accidental. The court termed cases of the first group cases of accident but no self-defense. In those cases, the defendants had not shown self-defense since intent or force prior to the injury was lacking. As such, instructions on that issue had been properly denied, regardless of any inconsistency with the defense of accident. The court termed cases of the second group as cases of self-defense plus accident. Those cases involved "intentional self-defense though unintended result." Therein, intentional acts were the basis for self-defense theories and instructions, but only to support ultimate defenses of accident as to the injury for which the defendants were tried. In other words, the defendants in those cases relied on accident theories as to the injury inflicted and self-defense theories as to their acts preceding the injury. *Robinson*, 163 Ill. App. 3d at 762, 768.

The crux of this case is thus in determining within which group this case falls. That is, did defendant's evidence reveal intentional acts of self-defense immediately preceding an allegedly accidental injury or merely an allegedly accidental injury not preceded by any acts of self-defense? Stated differently, the issue here is whether defendant was engaged in intentionally self-defensive acts immediately prior to the shooting of Island, thus entitling him to have the jury instructed on self-defense. After considering the differences between the two groups of cases, as outlined in *Robinson*, we find that defendant's evidence revealed intentional acts of self-defense and that

he was thus entitled to have the jury instructed on that defense.

The *Robinson* court classified each of the cases the State relies upon here, and in which self-defense instructions were held properly refused, as cases of accident but no self-defense. It classified the cases defendant relies upon, in which such instructions were held properly given, as cases of self-defense plus accident.

Specifically, the *Robinson* court found that in *People v. Shelton* (1985), 140 Ill. App. 3d 886, 489 N.E.2d 879, the defendant never affirmatively used force against anyone but merely, without intending to stab, extended a knife into which the victim ran. Thus, the *Robinson* court concluded that the *Shelton* defendant did not initiate any use of force constituting self-defense under the statutory definition of the term and entitling him to self-defense instructions.

In *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448, the defendant testified that: (1) he struggled with his wife when she pointed a gun at him; (2) during the struggle, one shot, which defendant did not think struck his wife, was fired; (3) he got the gun from his wife; and (4) while he held it, his dog jumped at his arm, causing other shots to be fired. The *Robinson* court reasoned that, based on the *Purrazzo* defendant's own testimony, when the shots which hit his wife were fired, any acts of self-defense had been completed since he then possessed the gun and his wife was sitting on the couch onto which he had pushed her. The court therefore concluded that the *Purrazzo* defendant was indeed relying on an accident theory and had failed to show that he was engaged in any intentional self-defensive acts when the shots, which indisputably hit his wife, were fired.

In *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077, the defendant testified that the victim produced a gun and threatened to kill him and herself if the defendant drove to meet her boyfriend; he struggled with the victim for the gun; the gun went off accidentally while the victim was holding it; he did not shoot her with an intent to kill her. The *Robinson* court said that no self-defense justifying an instruction thereon was shown in *Dzambazovic*. The court relied on the fact that the force threatened by the victim was not imminent, since it was conditioned upon the defendant's driving to meet the victim's boyfriend, and that the defendant did not testify that he initiated the struggle from a motive of self-defense.

The State asserts that this case is indistinguishable from *Shelton*, *Purrazzo*, and *Dzambazovic*. Specifically, the State asserts that, as in those cases, there was no evidence of an intentional or justifiable use of force by defendant. In so arguing, the State relies upon defend-

ant's testimony that he had the gun because he was afraid of Island and wanted to frighten him, that Island had turned away from him, and that the gun discharged when his shoulder bumped against the mailboxes. That the defendant acted to protect himself, the State argues, was insufficient to raise the issue of self-defense in view of his lack of intent to harm the victim, citing *People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403.

We believe that the State's reliance on *Tanthorey* is misplaced. We further believe that its argument that defendant did not engage in an intentional use of force against Island, as required under section 7—1 for a self-defense instruction (*People v. Whitelow* (1987), 162 Ill. App. 3d 626, 515 N.E.2d 1327), is incorrect.

In *Tanthorey*, the defendant testified that a gun he was about to discard discharged while he was struggling with the victim, who had accosted him in an alley, and that he did not intend to shoot. In classifying *Tanthorey* as a case of accident but no self-defense, the *Robinson* court reasoned that, according to his own testimony, the *Tanthorey* defendant never affirmatively used force against anyone, but merely raised his arm to ward off any force that might be directed at him. The court thus concluded that self-defense instructions had been properly refused in *Tanthorey* because self-defense, in terms of an affirmative use of force against someone, had not been shown.

Here, in contrast to *Tanthorey* and contrary to the State's assertion, defendant's act of pulling and pointing a gun at Island after perceiving that Island was holding a beer can or other object in a striking position was an affirmative and intentional use of force in defense of self.

In *People v. Whitelow* (1987), 162 Ill. App. 3d 626, 515 N.E.2d 1327, the defendant testified that Bobby Joe Capers and another, with whom he had been arguing, began advancing toward him; he became frightened because of prior beatings by Capers and his friends; he ran for something with which to defend himself while being chased; he grabbed an object from a fourth person without realizing it was a shotgun; the gun discharged as he grabbed it; and he did not intend to shoot or kill Capers. As in this case, the State defended the trial court's refusal of self-defense instructions on the grounds that defendant's defense was accident and he did not intend to shoot Capers. In rejecting the argument, the appellate court noted its holdings in two prior cases that self-defense instructions were appropriate although the defendants testified the deaths resulted from accidents. Of one of those cases, *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 414 N.E.2d 262, which defendant cites and the *Robinson* court placed in

the "self-defense plus accident" category, the court noted: "In *Buchanan*, the defendant alleged he pulled a handgun on the victim to protect himself. A struggle ensued, the gun fired, and the victim died." *Whitelow*, 162 Ill. App. 3d at 629.

*Whitelow* and *Buchanan* are thus dispositive of the question whether defendant here engaged in an intentional act of force which supported instructing the jury on self-defense. That is, defendant's act of pulling the gun, pointing it at Island and cocking the hammer was as much, if not more, an act of force as the acts of the *Whitelow* and *Buchanan* defendants.

In view of the rejection of the argument in prior cases (*People v. Whitelow* (1987), 162 Ill. App. 3d 626, 515 N.E.2d 1327; *People v. Cruz* (1978), 66 Ill. App. 3d 760, 764, 384 N.E.2d 137; *People v. Brooks* (1985), 130 Ill. App. 3d 747, 474 N.E.2d 1287; see also *People v. Robinson* (1987), 163 Ill. App. 3d 754, 769, 516 N.E.2d 1292), we also find the State's reliance on defendant's lack of intent to shoot Island unavailing. In so arguing, the State misconstrues the intent necessary to support a self-defense instruction in cases of this type. As *Robinson* makes clear, that intent is an intent to use force in the defense of self. It is not an intent to cause or inflict the injury which leads to the criminal charge against the defendant.

The State also attempts to distinguish *People v. Stewart* (1986), 143 Ill. App. 3d 933, 494 N.E.2d 1171, and *People v. Brooks* (1985), 130 Ill. App. 3d 747, 474 N.E.2d 1287, which defendant cites in support and which the *Robinson* court classified as cases of self-defense plus accident.

Specifically, the State asserts that the *Stewart* defendant, who testified that he was trying to stab the victim, intended to use force to defend himself, unlike defendant here. In view of our conclusion that defendant also intentionally used force to defend himself, we find the State's argument unavailing.

The State argues further that, unlike the *Brooks* defendant's testimony that the victim had shot at him, the testimony of defendant here did not establish a need for self-defense. This argument ignores defendant's testimony that Island was holding an object in a striking position before defendant pulled and pointed his gun at him. This testimony established defendant's belief in a need to defend himself. Defendant's testimony that Island turned away as he was stepping backwards and that the gun went off as he was so doing, upon which the State relies, did not negate the propriety of instructing the jury on self-defense.

"The allegedly accidental nature of the ultimate gunshot does not

vitiate the self-defense evidence as to" the acts of the defendant "that *immediately* preceded it." (Emphasis added.) (*People v. Robinson*, 163 Ill. App. 3d at 770.) Moreover, "[t]he evidence of self-defense *immediately* preceding the alleged accident distinguishes the instant case from others in which no such evidence had been offered and the refusal of a self-defense instruction was upheld." (Emphasis added.) (*Robinson*, 163 Ill. App. 3d at 771, citing, *inter alia, People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448.) Of the cases cited by the parties, *Purrazzo* is the most factually analogous to this case. However, like the *Robinson* court, we find it distinguishable from this case on the ground that the claimed self-defensive acts of the defendant therein did not immediately precede the injury for which he was tried.

Because we disagree with the State that defendant did not establish that he was involved in self-defensive acts immediately preceding or at the time of Island's shooting, we likewise find unavailing its attempt to distinguish *Robinson* and *Buchanan* from this case on that ground.

■■ The State also argues that any error in the refusal of self-defense instructions was harmless beyond a reasonable doubt, given the clear, convincing and overwhelming evidence of guilt, citing *People v. Jiminez* (1983), 115 Ill. App. 3d 1091, 452 N.E.2d 40, and *People v. Jones* (1980), 81 Ill. 2d 1, 405 N.E.2d 343. In neither of those cases, however, did the defendants claim that the injuries for which they were tried resulted from accident preceded by acts of self-defense, as in this case. As such, we find them inapposite here. In this case, defendant testified regarding a perceived need to defend himself. Even a slight amount of evidence raises the self-defense issue and justifies an instruction thereon. (*People v. Robinson*, 163 Ill. App. 3d 754, 761, 516 N.E.2d 1292.) As such, we cannot say that the refusal of such instructions here was harmless beyond a reasonable doubt.

■■ In sum, we believe that defendant sufficiently raised the defense of self-defense and that, contrary to the trial court's belief, his claim that he shot Island accidentally did not preclude his right to have the jury instructed on that defense as a matter of law. This conclusion requires us to hold that defendant was also entitled to have the jury instructed on voluntary manslaughter.

Section 9—2(b) of the Code provided at the time of the shooting, in relevant part:

"(b) A person who intentionally or knowingly kills an individ-

ual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in [Ill. Rev. Stat. 1985, ch. 38, par. 7—1 *et seq.*], but his belief is unreasonable." (Ill. Rev. Stat. 1985, ch. 38, par. 9—2.) "When a self-defense instruction is warranted, an instruction tendered by the defendant on voluntary manslaughter is also required, since the existence of a subjective but unreasonable belief in the need for self-defensive force can lead to a voluntary-manslaughter conviction." (*Robinson*, 163 Ill. App. 3d at 777.) The trial court's failure to instruct the jury on self-defense and voluntary manslaughter requires a new trial.

Finally, because the State may desire to use defendant's recorded statement at a new trial, we must address the contentions that the trial court erred in failing to suppress that statement and that the State violated defendant's fifth amendment right to remain silent by using the statement to impeach him.

As the basis of the first contention, defendant asserts that the State's failure to record all of his statements to the police denied him State and Federal due process. The only case directly supporting defendant's position is *Stephan v. Alaska* (Alaska 1985), 711 P.2d 1156. The Alaska Supreme Court decided the issue under the due process clause of the Alaska Constitution.

■■ While the due process clause of the Alaska Constitution (Alaska Const., art. 1, §7) is identical to that of the Illinois Constitution (Ill. Const. 1970, art. 1, §2), we decline to interpret the Illinois Constitution as broadly as the *Stephan* court interpreted the Alaska Constitution. As the Vermont Supreme Court reasoned in declining to interpret the due process clause of the Vermont Constitution in accord with *Stephan*, the most appropriate means of augmenting the due process rights of citizens, especially in view of the ramifications of the rule urged by defendant, is through legislation. (See *Vermont v. Gorton* (1988), 149 Vt. 602, 606, 548 A.2d 419, 422.) "In the absence of legislation, we do not believe it appropriate to require, by judicial fiat, that all statements taken of a person in custody" be recorded or transcribed. *Gorton*, 149 Vt. 602, 606, 548 A.2d 419, 422.

Moreover, contrary to defendant's assertion, custodial interrogations need not be recorded to satisfy the due process requirements of the U.S. Constitution relating to the preservation of evidence, as established in *California v. Trombetta* (1984), 467 U.S. 479, 81 L. Ed. 2d 413, 104 S. Ct. 2528. *Stephan v. Alaska* (Alaska 1985), 711 P.2d 1156, 1160.

■■ We also find unavailing defendant's contention that the State's use of his recorded statement to impeach him violated his right to remain silent.

*People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43, the only case defendant cites in support, held that the State's introduction into evidence of the defendant's failure to tell the police why he shot the deceased violated his right to remain silent, notwithstanding his admission to the police that he did shoot the deceased. In *Robinson*, the defendant expressly invoked his "rights" in refusing to tell the police why he shot the deceased. *Robinson*, 44 Ill. App. 3d at 448-49.

Here, in contrast, defendant expressly stated in his recorded statement that he understood his *Miranda* rights but nonetheless agreed to talk to the assistant State's Attorney. That is, he waived his right to remain silent. Moreover, that defendant was not asked by the assistant State's Attorney about those matters upon which he was impeached with the recorded statement does not require a conclusion that the State violated his right to remain silent with respect thereto. Having knowingly and intelligently waived his *Miranda* rights and having agreed to make the recorded statement, defendant cannot now complain of its contents or its omissions.

In view of our remandment for a new trial, we need not address defendant's contentions that prejudicial remarks by the prosecutor in closing argument denied him a fair trial or that his sentence is excessive.

For all of the foregoing reasons, defendant's conviction is reversed and the cause is remanded for proceedings consistent with this opinion.

Reversed and remanded.

RIZZI, J., concurs.

JUSTICE McNAMARA,* dissenting:

I dissent from the majority holding that defendant adequately raised the issue of self-defense, and that the trial court committed reversible error in refusing to instruct the jury as to the law of self-defense. I would affirm the judgment entered on the jury verdict finding defendant guilty of murder.

The majority tenuously relies on scanty comments by defendant

---

*Justice McNamara participated in this opinion prior to his assignment to the Sixth Division.

that, while pointing a loaded gun at the victim, defendant became afraid when he saw the victim holding a beer can and heard Jeffries say "hit him." These bare statements can hardly imply self-defense unless the court "fragments the testimony in a 'selective process *** so attenuated as to strain credulity to the breaking point.' " *United States v. Wagner* (9th Cir. 1987), 834 F.2d 1474, 1486 n. 12, quoting *United States v. Crowder* (D.C. Cir. 1976), 543 F.2d 312, 318.

A self-defense instruction should be refused where defendant fails to present some evidence from which a jury could conclude that defendant had a subjective belief that use of force was necessary to defend himself against the imminent use of unlawful force. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1; *People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378.) Defendant must produce enough evidence to place the defense in issue. At that point, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *People v. Carter* (1988), 177 Ill. App. 3d 593, 532 N.E.2d 531.

Significantly, it is a question of law whether or not defendant has introduced sufficient evidence to support an instruction on self-defense. (*People v. Shelton* (1985), 140 Ill. App. 3d 886, 489 N.E.2d 879, citing *People v. Woods* (1980), 81 Ill. 2d 537, 410 N.E.2d 866.) When the law of self-defense does not apply to, and is not supported by, the issues and evidence in the case, a self-defense instruction may properly be refused. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; *People v. Shelton* (1985), 140 Ill. App. 3d 886, 489 N.E.2d 879; *People v. McGee* (1982), 110 Ill. App. 3d 766, 443 N.E.2d 1057; *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292.) Instructions are not justified if they are wholly unrelated to the case and are based on the merest factual reference in a witness' comment. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; *People v. Robinson* (1987), 163 Ill. App. 3d 754, 516 N.E.2d 1292.) Furthermore, a court may refuse, as a matter of law, to accept only an assertion or comment by defendant to support a self-defense instruction when the defendant also offers strong testimony that it was an accidental injury. See, *e.g., People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403; *People v. Mitchell* (1987), 163 Ill. App. 3d 58, 516 N.E.2d 500; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461; *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077; see generally Annotation, *Accused's Right, in Homicide Case, to Have Jury Instructed as to Both Unintentional Shooting & Self-Defense*, 15 A.L.R. 4th 983 (1982).

The court may consider, in determining this question of law, defendant's testimony, the type of wound inflicted, defendant's intent

or motive, testimony of other witnesses, whether the testimony is contradictory, and references to a self-defense scenario. (See, *e.g., People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43.) The trial court here properly considered evidence of defendant's intent or motive. Defendant repeatedly testified he did not intend to shoot.

"Q. And was it your intention to shoot him at that time?
A. No, it wasn't.

* * *

Q. Did you go downstairs intending to shoot [the victim]?
A. No, I did not.

* * *

Q. When you pulled your pistol, did you intend to shoot him?
A. No, I did not.
Q. What did you intend to do at that time?
A. I pulled it just to scare him.
Q. And why did you shoot him?
A. Because of my right shoulder hitting the mailbox."

The trial court also properly considered defendant's repeated statements that the killing was an accident. (See *People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403.) Defendant stated:

"My right shoulder bumped into the mailbox and caused the pistol to go off.

* * *

I had taken two steps backwards and when I bumped into my mailbox, that is what caused it to go off.

* * *

And on the second step backwards was when my shoulder bumped into that mailbox and caused the pistol to go off.

* * *

My right shoulder bumped into the mailbox * * *.

* * *

Q. Are you telling that jury that this was an accident?
A. Yes, it was.

* * *

Q. You didn't tell the first two police officers that it was an accident.
A. Yes, I did.
Q. You did?
A. Yes, I did."

Defendant's only intent was "to scare him." He took out his pistol, pointed it at the victim and cocked it merely "to make him leave me alone." Defendant repeated: "I pulled it [out] just to scare him."

Defendant apparently succeeded. In fact, defendant testified that when he drew the gun, the victim "had turned around and begun to run." Defendant watched him run away. Unfortunately, as the scared victim turned and ran, he slipped, and defendant claimed that he accidentally shot him in the back.

In addition, defendant cannot rely on self-defense since he acted as the aggressor. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1; *People v. Shelton* (1985), 140 Ill. App. 3d 886, 489 N.E.2d 879.) Defendant returned to the scene with a loaded gun and ran towards the victim, while the victim merely stood holding a beer can and then fled. (See, e.g., *United States v. Wagner* (9th Cir. 1987), 834 F.2d 1474; *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; *People v. Shelton* (1985), 140 Ill. App. 3d 886, 489 N.E.2d 879; *People v. McGee* (1982), 110 Ill. App. 3d 766, 443 N.E.2d 1057.) As a matter of law, therefore, he cannot invoke the affirmative defense of justifiable use of force.

Furthermore, a defendant invoking self-defense must actually have believed that a danger existed. The danger must be of an imminent and present harm, and not merely harm threatened at a future time or threatened by someone without the present ability to carry out the threat. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) Defendant here does not claim the victim was attempting to harm him at the time of the shooting. There was no advance by the victim toward defendant, and no physical movement or verbal threats from the victim. There was insufficient evidence that the victim presented any imminent threat. See *People v. McGee* (1982), 110 Ill. App. 3d 766, 443 N.E.2d 1057, comparing *People v. Foster* (1980), 81 Ill. App. 3d 915, 401 N.E.2d 1221 (victim's threats followed immediately by victim's advance toward defendant), with *People v. Shelton* (1985), 140 Ill. App. 3d 885, 489 N.E.2d 879 (following argument, defendants left and later went to victim's home armed with weapons).

Defendant must not only believe his use of force was necessary to avert imminent danger, but also that the kind and amount of force which he used was necessary. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) The privilege of using deadly force is limited to situations where the force imminently threatened apparently will cause death or great bodily harm. (Ill. Rev. Stat. 1985, ch. 38, par. 7—1; *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31.) Defendant here makes absolutely no claim, nor is there any evidence, that he thought it was necessary to use a deadly weapon. Prior to the shooting, the victim held a beer can in one hand. The victim did not say he was going to strike defendant and did not move his arm. No jury could make a rational finding that holding a beer can at waist level, in

a normal position at a 45-degree angle to the body, is a "striking position" which would create fear of imminent death or great bodily harm.

Moreover, the trial court could also rely on defendant's testimony that the first encounter could not even be described as a fight. "It wasn't a fight, it was just a little, a brief argument, that is all it was." Defendant's bare statement expressing his fear during the first encounter with the victim is merely one evidentiary aspect of the requirement of reasonable belief that force was necessary to prevent imminent harm in the second encounter. See Ill. Ann. Stat., ch. 38, par. 7—1, Committee Comments, at 388-90 (Smith-Hurd 1972).

Defendant also points to his bad eyesight and the silhouetted hand holding the beer car. Poor eyesight does not mandate a self-defense instruction. (See, *e.g., United States v. Wagner* (9th Cir. 1987), 834 F.2d 1474 (notwithstanding defendant's severely impaired eyesight and mistaken perception of an attacker advancing with a weapon, the court upheld the refusal of a self-defense instruction).) Moreover, defendant here does not even suggest that the victim was advancing on him.

Defendant notes Jeffries' urging that the victim "hit him." A bare statement of defendant that the victim might harm him is wholly insufficient to support a self-defense instruction. See *People v. Carter* (1988), 177 Ill. App. 3d 593, 532 N.E.2d 531.

I would find no evidence upon which a jury could conclude that defendant actually believed deadly force was necessary to prevent imminent death or great bodily harm. (See Ill. Rev. Stat. 1985, ch. 38, par. 7—1; *People v. Cannon* (1988), 176 Ill. App. 3d 49, 530 N.E.2d 1035.) Defendant's subsequent drawing of the gun was unreasonable, excessive and invalidated any possible claim of self-defense under Illinois law. (See *People v. Carter* (1988), 177 Ill. App. 3d 593, 532 N.E.2d 531; *People v. McGee* (1982), 110 Ill. App. 3d 766, 443 N.E.2d 1057; *People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; Ill. Rev. Stat. 1985, ch. 38, par. 7—1.) Defendant could not have feared for his life, even unreasonably. A jury could not have viewed this as a situation requiring the use of deadly force for protection. No matter how we view the facts, turning them inside out and searching for any possible inference of self-defense, the testimony never changes. The victim offered no threat to defendant, who briefly left the scene to acquire, and returned to display, a loaded, cocked, deadly weapon.

The majority muddles this critical issue considerably by incorrectly insisting that the crux of this case lies in its finding that an accident theory may be raised as an alternative to a self-defense theory.

I agree with the conclusion, but for a different reason, one which significantly affects the result of this case.

The majority, citing *Robinson*, proclaims that the accidental defense cases which have upheld the refusal of a self-defense jury instruction did so because there was *no* evidence of self-defense. That is not correct. In fact, the court in all of those cases, as here, found bare references to self-defense. However, the courts found the evidence wholly insufficient to permit the jury to be instructed on self-defense. The fact that the alternative defense happened to be accidental injury did not alter or affect the fact that there was simply insufficient self-defense evidence.

Thus, many Illinois cases which happen to involve an alternative defense theory of unintentional injury, such as accident, hold that defendant offered insufficient evidence of self-defense to support an instruction.

In *People v. Bratcher*, defendant testified that two police officers started beating him and stated they were going to "whip him," and he struck the officer. The court found this "merest factual reference" to self-defense insufficient to support an instruction because defendant testified he was angry and automatically struck out at the officer.

In *People v. Tanthorey*, defendant testified that during a disagreement he threw up his hand to protect himself when the gun he held fired. Our supreme court held that the self-defense instructions were properly refused because defendant testified the killing was an accident.

In *People v. Mitchell*, defendant testified he fatally cut his wife's neck after she attacked him. There was also some evidence that defendant made a statement that he intended to kill his wife. The court held that a self-defense instruction was properly refused, notwithstanding the bare factual reference to self-defense. The type of neck wound was not a typical wound inflicted in self-defense, and defendant testified the killing was an accident.

In *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915, defendant attacked the victim with a hammer, and the victim produced a gun. During the struggle, the gun fired twice. The court held that the self-defense instruction was properly refused because the entire defense was premised on accident, and on defendant's lack of intent to kill.

In *People v. Shelton*, a codefendant testified that the victim grabbed, punched and kicked defendant, who ran away. He returned later and the victim again advanced, charging and carrying a raised bicycle. Defendant took a knife from his pocket and extended it in the

victim's direction, and the victim accidentally ran into the knife. The court upheld the refusal of a self-defense instruction because defendant testified that he did not intend to stab the victim, and that the victim accidentally walked into the knife.

In *People v. McGee*, a witness testified he saw the victim pull a knife toward defendant. The court upheld the refusal of an instruction because, following an argument, defendant left the tavern and returned 15 minutes later with a pistol. The court concluded that the victim presented no imminent threat to defendant at the time of the shooting.

In *People v. Purrazzo*, defendant testified that his wife threatened him and pointed a gun at him. He disarmed her, and the dog jumped on his arm, causing the gun to repeatedly fire accidentally. The court upheld the refusal of a self-defense instruction because defendant testified the shooting was accidental, and because the evidence failed to show the killing resulted from the threats or provocation that preceded it. (The majority here claims the acts of self-defense in *Purrazzo* "did not immediately precede the injury." (184 Ill. App. 3d at 908.) On the contrary, defendant wrestled the gun from his wife and pushed her down on the couch *immediately* preceding the accidental firing of the gun when the dog jumped on his arm.)

In *People v. Dzambazovic*, defendant testified he struggled to get the gun, presumably to protect himself from being shot. No self-defense instruction was required. This court relied on defendant's testimony that the actual killing was an accident.

In the present case, the evidence established that the victim died either as a result of defendant's intention to kill him, which the jury found, or inadvertently when defendant bumped against the mailbox, which the jury rejected in finding defendant guilty of murder. There was no justification for giving a self-defense or voluntary manslaughter instruction.

The majority relies heavily on *People v. Buchanan* (1980), 91 Ill. App. 3d 13, 414 N.E.2d 262, and *People v. Whitelow* (1987), 162 Ill. App. 3d 626, 515 N.E.2d 1327. These cases offer weak support for such a jury instruction.

In *Buchanan*, not only were the instructions unchallenged, but the court in fact gave jury instructions on self-defense and voluntary manslaughter. The only issue was whether the trial court erred in excluding certain evidence of the victim's reputation and character to support evidence that the victim was the initial aggressor.

Moreover, *Buchanan* is weak support for characterizing the present matter as a self-defense case. In finding error, the *Buchanan*

court did note that the theory of an accidental shooting during a struggle did not negate the self-defense theory because the preceding events placed the shooting in a self-defense context. However, in contrast to the present case, the evidence in *Buchanan* disclosed that the victim angrily approached defendant, grabbed defendant's car keys from the ignition to prevent escape, threatened defendant, hit him, and dragged him from the car. The victim was rushing toward defendant with his hand reaching into the pocket where he always carried a knife when defendant grabbed the victim's gun from the car trunk. Defendant first fired over the victim's head, and then accidentally shot the victim as they struggled over the gun. The present case involves no aggressive attack by the victim; no physical contact between the victim and defendant; no rush for a defensive weapon; no warning shot; and no struggle over the gun. *Buchanan* has little or no relevance here.

Similarly inapplicable is *Whitelow*, where defendant was involved in an argument outside a liquor store. One man held a broken bottle, and defendant grabbed an object from a third man to defend himself. He did not realize it was a gun. The gun accidentally discharged when he grabbed it, killing a fourth person. No such circumstances existed here. The evidence of self-defense found in *Whitelow* and *Buchanan* is not present here.

The majority shares the concern of many Illinois courts (see, *e.g., People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756), about the distinction between self-defense, which requires intentional use of force, and an accidental or unintentional shooting. In *Joyner*, the court reversed a conviction because a voluntary manslaughter instruction was improperly omitted.

Many Illinois cases have dwelt on this issue and have expressly set forth a general rule forbidding these inconsistent theories. See, *e.g., People v. Shelton* (1985), 140 Ill. App. 3d 886, 489 N.E.2d 879; *People v. Charleston* (1985), 132 Ill. App. 3d 769, 477 N.E.2d 762; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915; *People v. Chatman* (1982), 110 Ill. App. 3d 19, 441 N.E.2d 1292; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461; *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077; *People v. Johnson* (1964), 54 Ill. App. 2d 27, 283 N.E.2d 283; see also *State v. Hafeli* (Mo. App. 1986), 715 S.W.2d 524.

As a general rule, however, inconsistent theories may be submitted to the jury. The United States Supreme Court recently held in *Mathews v. United States* (1988), 485 U.S. 58, 99 L. Ed. 2d 54, 108 S. Ct. 883, 887, that inconsistent defenses may be raised. The Court

specifically noted that State cases support the proposition that a homicide defendant may be entitled to instructions on both accident and self-defense. (Accord *United States v. Wagner* (9th Cir. 1987), 834 F.2d 1474; *People v. Bacon* (N.D. Ill. 1982), 551 F. Supp. 269, 273, *aff'd* (7th Cir. 1984), 728 F.2d 874; *People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43; *People v. Whitelow* (1987), 162 Ill. App. 3d 626, 515 N.E.2d 1327; *People v. Stewart* (1986), 143 Ill. App. 3d 933, 494 N.E.2d 1171; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461; *People v. Cruz* (1978), 66 Ill. App. 3d 760, 384 N.E.2d 137; *People v. Brooks* (1985), 130 Ill. App. 3d 747, 474 N.E.2d 1287; *People v. Smythe* (1971), 132 Ill. App. 2d 685, 270 N.E.2d 431; see generally Annot., 15 A.L.R.4th 983 (1982); 4 Wharton's Criminal Procedure §§545, 547, at 32, 34 (1976).) Thus, inconsistent defenses of self-defense and accident may be raised alternatively, but only where there is enough evidence to support each theory. The present case simply does not have sufficient evidence to support a self-defense instruction, and the majority evades the true nature of the issue on appeal by focusing on the question of conflicting defenses.

I believe that defendant was proved guilty of murder beyond a reasonable doubt; that the jury was properly instructed; that the trial court correctly denied defendant's motion to suppress his statement; and that defendant was not denied a fair trial as the result of any prosecutorial comment. I also believe that the sentence imposed was appropriate. Consequently, I would affirm the judgment of conviction.