**Michael D. SAVICKAS, Petitioner,**

v.

**Daniel C. BOSSE, Warden, Logan Correctional Center, Respondent.**

No. 97 C 2886.

United States District Court, N.D. Illinois, Eastern Division.

Oct. 22, 1998.

Richard Stephen King, IIT Chicago–Kent College of Law, Chicago, IL, for Petitioner.

Michael D. Savickas, Lincoln, IL, pro se.

Paul James Chevlin, Illinois Atty. General's Office, Chief of Criminal Appeals, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Following a jury trial, Petitioner Michael D. Savickas was convicted of first degree murder and sentenced to 28 years' imprisonment. Savickas pursued state appellate and post conviction remedies without success, and now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his petition, Savickas raises three issues that he claims entitle him to a new trial: 1) his conviction was based on the perjured testimony of the state's only eyewitness; 2) he was deprived of his constitutional right to confront witnesses; and 3) the jury was improperly instructed at trial. For the reasons set forth below, Savickas' petition for a Writ of Habeas Corpus is denied.

### RELEVANT FACTS

The following facts are gleaned from the Illinois appellate court opinion reported at *People v. Savickas,* 230 Ill.App.3d 322, 171 Ill.Dec. 713, 594 N.E.2d 1233 (Ill.App.1992). *Hockett v. Duckworth,* 999 F.2d 1160, 1165 (7th Cir.1993) ("Under 28 U.S.C. § 2254(d), we presume that state court findings of fact are correct if the findings are made after a hearing on the merits, and are fairly supported by the record."). Robert Walensky owned and operated the New Gold Coast Inn, a tavern located at 71st and Maplewood Avenue in Chicago. On the afternoon of March 31, 1988, Daniel Chaplics and James Pecelli, both employees of the City of Chicago Department of Streets and Sanitation, arrived at the tavern. Kevin Murray and David Stack, employees of the City of Chicago Water Department, arrived at the tavern almost an hour later. At approximately 6 p.m., they were joined by Savickas and Casey Janus, both foremen with the Water Department.

Shortly after Savickas and Janus arrived, Stack began arguing with Janus, his immediate supervisor. When the discussion turned loud and profane, Walensky intervened. Janus, who appeared to be drunk, refused to settle down, so Walensky grabbed him by the arm and attempted to escort him out of the

tavern. Janus pulled away from Walensky, turned to Savickas, asking for a gun and threatening to shoot Stack. Undeterred, Walensky pushed Janus out of the front door and returned to tending the bar.

Janus' departure did little to deflate tensions as Savickas then began arguing with Stack. When Savickas asked Stack why he did not like Janus, Stack responded that it was none of Savickas's · business. Annoyed by Stack's perceived insubordination, Savickas threatened that he could have Stack's job. Although Murray, Chaplics, Pecelli, and Walensky heard Savickas arguing with Stack, they did not hear the substance of the argument. Chaplics, however, did hear Savickas threaten to have Stack fired. Savickas then pulled out his gun and, pointing it at Stack's stomach, said, "I could blow you away right now."

Chaplics informed Walensky of the incident, prompting Walensky to come out from behind the bar and ask the defendant to leave. Savickas refused and resumed his argument with Stack. After Walensky told him to leave again, Savickas began verbally abusing Walensky. When Walensky ordered Savickas out for the third time, several patrons assured Walensky that they could take care of Savickas and Walensky relented. Walensky lost his patience, however, when Savickas continued his verbal abuse. Walensky refused to serve him more beer, came around the bar, and jerked Savickas off his barstool, causing Savickas's gun to fall to the floor. After Savickas picked up the gun, Walensky walked him to the front door and pushed him out of the tavern.

Savickas began banging on the front window of the tavern with his gun, demanding that Walensky open the door. Walensky refused, but Savickas persisted. Walensky grabbed a baseball bat that he kept behind the bar and ran out the front door. Stack, Murray, Pecelli, and Chaplics stayed inside at the bar.

Thomas Vinicky, who occasionally cleaned and stocked the tavern for Walensky, was unnerved by the raucous he had observed in the bar. Vinicky, whom Walensky described as a "most passivistic [sic]" person, was not involved in either altercation nor did he attempt to assist Walensky in expelling Janus or Savickas from the bar. Vinicky stated that he was "getting the hell out of here" and left through the side door.

As Walensky stood by the front door of the tavern with the baseball bat, he could see Savickas just beyond the side door. Walensky testified that he saw Savickas pull out a gun and shoot Vinicky in the chest as Vinicky was stepping backwards.

Walensky ran back into the bar, yelling that Vinicky had been shot and needed an ambulance. No one inside the tavern had witnessed the shooting. Walensky grabbed a .32 revolver from behind the bar and, accompanied by Chaplics, went out the side door to help Vinicky. Walensky, Chaplics, and several other patrons went over to Vinicky, who had no weapon in his hands or near him. Pecelli yelled to Walensky to shoot Savickas. Hearing sirens, Savickas abruptly turned and walked behind the alley of a funeral home.

Edwin Gonzales, a 16–year–old from the neighborhood who had heard the gunshot, saw Savickas throw something on top of a roof. He also observed Savickas try to stick something into the glass doors of a nearby funeral home. The Chicago police found Savickas hiding in the funeral home parking lot and placed him under arrest. They recovered his gun from the gutter on the roof and a spent cartridge from the ground near the funeral home. After the officers had secured the scene, they went to the hospital where Vinicky had been taken and learned that Vinicky had died.

At trial, the State called Walensky as its primary witness. Because of Walensky's checkered past, the State began by airing his dirty laundry. Initially, Walensky admitted to two prior felony convictions. Walensky then confessed that several days after the shooting, he met with attorney Robert Cooley and offered to alter his testimony regarding the shooting if Savickas's father, a state senator, would pay him $200,000. Cooley said he would "get back" to him, but never did. Unbeknownst to Walensky, Cooley was a federal government informant at the time, and the government prepared detailed memoranda about the meeting.

Before trial, Savickas requested the production of the memos and Cooley. The government turned the memoranda over, but Cooley refused to appear as a witness, despite a circuit court order compelling his production. Instead, Savickas's counsel interviewed Cooley by telephone. Cooley stated that he knew of no additional information other than that detailed in the government memos.

Walensky then proceeded to describe the incident. Walensky testified that Vinicky stood between him and Savickas, allowing him to see Savickas's front and Vinicky's back. On cross-examination, Walensky clarified that he was positioned at an angle that enabled him to see Vinicky's profile and only a portion of Savickas' front. During direct examination, Walensky testified that he approached Vinicky after he had been shot and did not see a weapon in Vinicky's hands or near his body. He also testified that Vinicky had nothing in his hands at the time he was shot. On cross-examination, however, Walensky admitted that he had not told the grand jury or the police that he had returned to the bar to retrieve his revolver. The impact of this discrepancy was minimized by Chaplic's testimony that he had witnessed Walensky grab a gun from behind the bar after the shooting. Several other bar patrons testified that when they ventured outside after Vinicky had been shot, they observed no weapons in Vinicky's hands or near his body.

Savickas testified in his own defense. Although Savickas admitted to shooting Vinicky, he claimed that he had done so in self-defense. He conceded that Stack and Janus had entered into a "heavy" argument, but noted that he had not given the drunken Janus his gun when requested to do so. Savickas testified that, even though he had attempted to diffuse the incident, afterward Walensky had begun to swear at him, telling him to leave the bar. Savickas claimed that he told Walensky that he wanted to finish his beer but that Walensky came around the bar, pulled him off his barstool, verbally abused him, and pushed him out of the tavern.

Savickas admitted banging on the window, but denied using his gun. He explained that he was wearing a large silver ring that may have made the banging sound. Savickas claimed that he grew discouraged and began walking away south on Maplewood. When he heard a voice say, "You're a jagoff," Savickas turned around to face Vinicky, standing by the tavern door. He could also see Walensky standing by the front door with a baseball bat. Savickas claimed that Vinicky yelled "I'm going to waste you," reached into his jacket, and began to pull out a gun. Savickas panicked, grabbed his gun, and shot Vinicky. He ran into a nearby alley when he heard someone yell to shoot him. He then emptied his gun and threw it on the roof, to deter others from shooting him with his own gun.

At the close of trial, the jury found Savickas guilty of first degree murder and he was sentenced to 28 years of imprisonment.

## PROCEEDINGS ON DIRECT APPEAL

On direct appeal, Savickas argued that 1) he was not proven guilty beyond a reasonable doubt; 2) he was denied his Sixth Amendment right to confront Cooley; and 3) the jury was improperly instructed as to the burden of proof for first degree murder; specifically, he asserted that the court failed to instruct the jury that the State had the burden to disprove his claim of self-defense beyond a reasonable doubt.

As to the first contention, Savickas merely argued that the testimony of Walensky, a convicted felon and an admitted extortionist, was not credible and had to be scrutinized with caution. The Illinois Appellate Court responded that issues concerning witness credibility were for the trier of fact to decide. The court noted that it was "not at will to overturn the judgment of the trier of fact unless the evidence fails to prove each element of the crime beyond a reasonable doubt." *Savickas*, 171 Ill.Dec. 713, 594 N.E.2d at 1239. It held that the issue of self-defense was one of fact and that where, as here, Savickas's testimony was contradicted, the jury need not believe Savickas. The court felt that a rational trier of fact could have reasonably found the elements necessary to convict Savickas of first degree murder.

The appellate court also rejected Savickas' argument that he was denied his Sixth Amendment right to confront a witness. Savickas asserted that he had suffered from prejudice as a result of the government's failure to produce Cooley, despite the court order compelling them to do so. He argued that more information was available than the government had tendered via the memoranda and what Walensky had chosen to say at trial. The appellate court held that the issue under the Confrontation Clause was "whether the jury ... [had] been made aware of adequate factors to determine whether the witness is worthy of belief." *Id. See also People v. Hines*, 94 Ill.App.3d 1041, 1048, 50 Ill.Dec. 312, 419 N.E.2d 420 (1981). The record revealed that the jury had been apprised of adequate factors concerning relevant areas of impeachment. The state court determined that merely because the defendant was deterred from pursuing an area of inquiry that was uncorroborated, such deterrence did not amount to a constitutional violation.

Finally, the court concluded that although the trial court may have failed to instruct the jury that the State had the burden of disproving Savickas's affirmative claim of self-defense, any failure to supplement the jury's proper instruction was harmless error and could not have affected the jury's verdict. The court noted that the jury was not erroneously advised that it was the defendant's burden to prove self-defense, and that the State acknowledged that it bore the burden to disprove self-defense. Instead, the court held that because the evidence supporting the defendant's first degree murder conviction was clear and convincing, the jury's verdict could not have been different had additional instructions been given.

Savickas petitioned the Illinois Supreme Court for leave to appeal the appellate court's ruling. The Supreme Court summarily denied the petition.

## STATE POST CONVICTION PROCEEDINGS

Savickas' next move was to submit a petition for post-conviction relief to the trial court. Savickas alleged that Walensky's deposition testimony in a related civil trial produced new evidence supporting Savickas's claim that his conviction was erroneously based upon the perjured testimony of Walensky, the state had improperly withheld impeaching information about Walensky, and the failure to produce Cooley violated his Sixth Amendment right to confrontation.

Walensky's testimony in the civil trial introduced new evidence of Walensky's relationship with Robert Cooley and raised questions of whether Walensky had retrieved a gun from behind the bar subsequent to Vinicky's murder. Specifically, Savickas noted that the government memoranda summarizing Cooley's meeting with Walensky (memos which Cooley had adopted as "basically correct") reported that Cooley and Walensky never had an attorney/client relationship. However, Walensky testified at the civil trial that Cooley had represented him in at least two criminal matters between 1973 and 1980. Savickas argued that this discrepancy shows that the government memoranda, as a whole, were inaccurate and incomplete.[1]

The post-conviction court held that despite the new information regarding the relationship between Cooley and Walensky, Savickas's Sixth Amendment right to confrontation had not been violated. The court held that this new information did not necessitate Cooley's testimony because the existence of a prior attorney/client relationship between Walensky and Cooley was immaterial to the question of Walensky's credibility.

The post-conviction court also concluded that Savickas's conviction was not based on perjured testimony. At the civil deposition, Walensky testified that from where he stood, he was unable to see Savickas pull the trigger. At trial, however, Walensky testified

---

1. In addition, at his civil deposition Walensky testified that someone, whose identity he did not recall, informed him that Cooley was representing Savickas. At trial, however, an assistant state's attorney had testified that Walensky had told her that someone might have suggested that he see Cooley, but that he did not remember who. The Illinois court concluded, and we agree, that these inconsistencies were so insignificant and peripheral that they hardly merited discussion.

that he saw Savickas pull out a gun and shoot Vinicky, who had his hands at his sides. In addition, Walensky's testimony as to whether he had returned to the bar after the shooting, taken a revolver, and carried it back outside was ambiguous. Specifically, at the criminal trial, Walensky had testified that he had taken the gun from behind the bar and carried it outside after the shooting. In contrast, at the civil deposition, when asked whether he had taken the gun, Walensky responded "no." On offering the negative answer at the civil deposition, Walensky was immediately asked: "[A]fter you returned inside the Gold Coast ... did you go behind the bar and get your revolver." This second question was objected to and Walensky never answered.

The post-conviction court held that these inconsistencies did not establish perjury. The court concluded that the discrepancy between Walensky's trial and civil deposition testimonies did not amount to perjury. The court rejected Savickas' position that the discrepancy concerning the retrieval of the gun might indicate that Vinicky had possessed a firearm (supporting Savickas' self-defense theory) where all of the evidence at trial indicated that the opposite was true. The court noted that David Chaplics testified at trial that he had observed Walensky grab a gun from behind the bar—directly contradicting any inference that Walensky may have retrieved the gun from Vinicky. In turn, Savickas presented no evidence, other than his own testimony, that Vinicky had possessed a firearm or that such a weapon was found near his body. The court held that the evidence was insufficient to show that Walensky's testimony denied Savickas a fair trial.

The court also rejected Savickas' contention that the State had improperly withheld impeaching evidence. Savickas alleged that he had not been informed about a criminal charge that was pending against Walensky when he testified against Savickas in April 1990. Walensky indicated in his civil deposition that he previously had been arrested for possession of a controlled substance—information he failed to offer at Savickas's trial.

The appellate court acknowledged that a defendant is entitled to information that goes to the credibility of the State's primary witness. *People v. Galloway,* 59 Ill.2d 158, 163, 319 N.E.2d 498 (Ill.1974). However, the court noted that Walensky's arrest record did not indicate that any charge was pending at the time of Savickas's trial. Rather, Savickas was convicted on May 23, 1990 and Walensky was arrested on June 19, 1990 for the possession of a controlled substance. The court concluded that Walensky most likely confused the sequence of events when he gave his deposition testimony three years later. Savickas failed to provide adequate evidence that Walensky had a charge pending or that the State withheld that information.

Finding that the defendant had failed to show that he was entitled to post-conviction relief, the court affirmed the circuit court's rejection of such relief. The Illinois Supreme Court summarily rejected Savickas' petition to appeal the appellate court's ruling.

## ANALYSIS

### 1. Standard of Review

Savickas filed this habeas petition on April 23, 1997, and is therefore governed by the recent amendments to 28 U.S.C. § 2254. Section 2254(d)(1) provides that habeas relief may be obtained only where the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The "contrary to" provision refers to questions of law; that is, a federal court review de novo whether a state court has deviated from the Constitution on legal questions. *Lindh v. Murphy,* 96 F.3d 856, 868–870 (7th Cir.1996) (en banc), *rev'd on other grounds,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).[2] Thus, federal courts

---

**2.** The Supreme Court reversed the Court of Appeals' en banc opinion in *Lindh v. Murphy* as to the retroactive application of the 1996 amendments to pending noncapital cases. The *Lindh*

are "free to express an independent opinion on all [constitutional] legal issues in the case." *Lindh,* 96 F.3d at 868–869.

 "Unreasonable application", however, refers to mixed questions of law and fact. *Id.* at 870. The "unreasonable application" exception "tells federal courts: Hands off, unless the [state court] judgment is based on an error grave enough to be called 'unreasonable'". *Id.* A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case." *Hennon v. Cooper,* 109 F.3d 330, 335 (7th Cir.), *cert. denied,*—— U.S. ——, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997). In other words, if a state court asks the "legally correct question [such as] whether the trial judge abused his discretion ... [then] the fact-specific answer cannot be called 'unreasonable' even if it is wrong." *Lindh,* 96 F.3d at 867–877.

Under § 2254(d)(2), habeas relief is otherwise possible only if the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" in the state court proceeding. 28 U.S.C. § 2254(d)(2). Having set forth the applicable standards, we will address each of Savickas' arguments in turn.

## I. Denial of Savickas's Right to Confrontation

Savickas first alleges that the non-enforcement of the subpoena issued atainst witness Robert Cooley violated his Sixth Amendment right to confront the witness. Savickas argues that the refusal to enforce the subpoena interfered with his ability to present a defense and prevented him from investigating and receiving accurate and complete information about the relationship between Cooley and Walensky. Allegedly, the non-enforcement prevented key evidence from being brought to the attention of the jury.

court's interpretation of the 1996 amendments, however, remains authoritative. *See Holman v. Gilmore,* 126 F.3d 876, 880 (7th Cir.) ("[t]he grant of certiorari in *Lindh* excluded ... most ... elements of the opinion ... so our treatment remains authoritative in this circuit"), *cert. de-*

In support of his argument, Savickas notes that the memoranda provided in lieu of Cooley's testimony are internally inconsistent and therefore unreliable. He argues that the unreliability of the memoranda demonstrate the need for Cooley's testimony at trial. Allegedly, the memoranda contradict each other as to the circumstances under which Cooley and Walensky met to discuss Savickas case. Savickas also asserts that there is no indication in the record that the memoranda provided by the government, which Cooley represented as "basically correct", were the same ones actually read to Cooley.

### a. Procedural Default

 The preliminary step in any habeas corpus proceeding is determining whether Savickas has procedurally defaulted any of his substantive claims by presenting them to the state courts. *Lostutter v. Peters,* 50 F.3d 392, 394 (7th Cir.), *cert. denied,* 516 U.S. 843, 116 S.Ct. 130, 133 L.Ed.2d 79 (1995). Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992). Habeas Savickass may fall into the procedural default trap by neglecting—notwithstanding diligent pursuit of all required appeals— to raise at the state level the federal claims asserted in the habeas petition. *See United States ex rel. Balderas v. Godinez,* 890 F.Supp. 732, 738 (N.D.Ill.1995).

 Procedural default now prevents us from addressing Savickas's claim that the unreliability of the government's memoranda necessitated Cooley's testimony at trial. This claim was not presented to the state courts on direct appeal or during post-conviction proceedings. *See Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

*nied,* 469 U.S. 1220, 105 S.Ct. 1204, 84 L.Ed.2d 347 (1985); *United States ex rel. Jordan v. Cooper,* 1997 WL 538716, at *1 (N.D.Ill. Aug. 27, 1997) (although *Lindh* has been reversed as to the retroactivity issue, "*Lindh* continues to bind this Court in substantive terms").

Although Savickas did argue that the failure to enforce the subpoena interfered with his ability to investigate the witnesses before the state courts, his federal habeas petition is the first forum in which he labels such a failure as a violation of his due process rights. On direct appeal to the Appellate Court of Illinois, Savickas only argued that his Sixth Amendment right to confrontation had been denied. *Savickas,* 594 N.Ed.2d at 1242. The same is true of his post-conviction appeal. *People v. Savickas,* 275 Ill.App.3d 1133, 229 Ill.Dec. 886, 692 N.E.2d 875 (Ill. App.1995).

If a Savickas wants to claim that he was "denied ... the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). In *Duncan,* Savickas, on direct appeal in state court, failed to label his claim a federal due process violation. 513 U.S. at 365, 115 S.Ct. 887. The court held that he had failed to fairly present the federal claim to the state courts and was barred from raising it in his habeas petition. 513 U.S. at 365–366, 115 S.Ct. 887. Similarly, if Savickas were now raising allegations of due process violations, he would be barred from making such claims.

Savickas has not, however, defaulted his related claims that 1) the non-enforcement of the subpoena against Cooley violated his right to confrontation because it denied him the chance to impeach Walensky's testimony with Cooley's testimony; and 2) the non-enforcement of the subpoena prevented him from investigating and receiving accurate and complete information about the relationship between Cooley and Walensky. Savickas claims that this failure to investigate violated his due process right to investigate the contacts between the two witnesses, as distinguished from his constitutional right to confront the witnesses against him. We now address those claims.

**b. Savickas's Right to Confront Cooley**

■■■ The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to "be confronted with the witnesses against him." *United States v.*

*Scott,* 145 F.3d 878, 888 (7th Cir.1998). However, there is no absolute right to a face-to-face meeting with witnesses. *Maryland v. Craig,* 497 U.S. 836, 844, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Instead, the Clause "permits, where necessary, the admission of certain hearsay statements against a defendant despite the defendant's inability to confront the declarant at trial." *Id.* at 847–848, 110 S.Ct. 3157. In certain narrow circumstances, "competing interests, if 'closely examined', may warrant dispensing with confrontation at trial." *Id.* at 848, 110 S.Ct. 3157. The Supreme Court has refused to read the Confrontation Clause as requiring the exclusion of any statement made by a declarant not present at trial. *Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Court adopted this rule so as not to abrogate "firmly rooted" hearsay exceptions. *Id.* at 63, 66, 100 S.Ct. 2531.

To accommodate these competing interests, the Supreme Court has developed a two-part test for determining whether to admit hearsay. "First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case ... the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Ohio,* 448 U.S. at 65, 100 S.Ct. 2531; *see Burns v. Clusen,* 798 F.2d 931, 936 (7th Cir.1986). Second, "to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the Confrontation Clause countenances only such hearsay as is marked by adequate 'indicia of reliability.'" *Burns,* 798 F.2d at 937. "Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Ohio,* 448 U.S. at 66, 100 S.Ct. 2531. In the absence of such exceptions, the evidence must be excluded "absent a showing of particularized guarantees of trustworthiness." *Id.*

■■■ In the instant case, we disagree that Savickas's right to confront a witness against him was compromised. As the Illinois appellate court correctly noted, "[f]or

purposes of the confrontation clause, a 'witness against a defendant' is one whose testimony is part of the body of evidence which the jury may consider in determining his guilt or innocence." *Savickas*, 171 Ill.Dec. 713, 594 N.E.2d at 1242 (citing *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Walensky was the "witness against the defendant." However, he openly admitted attempting to extort money from Savickas in exchange for favorable testimony. Walensky's only reference to Cooley's statements was that Cooley allegedly told Walensky that he would get back to hima statement not offered for the truth of the matter asserted. Cooley's testimony simply was not a part of the evidence offered *against* Savickas. Thus, there was no indication that Savickas lost his right to confront a witness about material evidence.

▆ Even if we were to assume, arguendo, that Savickas's rights were violated by the pretrial use of the government memoranda summarizing Cooley's statements regarding Walensky, the error was harmless.[3] The Supreme Court has determined that the *Kotteakos* harmless-error standard applies in deciding whether habeas relief must be granted because of constitutional error on the part of the trial court. *Brecht v. Abrahamson*, 507 U.S. 619, 637–638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Under the *Kotteakos* standard, "[t]here must be more than 'a reasonable possibility' that trial error contributed to the verdict; habeas Savickass are entitled to habeas relief based on trial error only if the error resulted in 'actual prejudice'.... The question is whether the error 'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Everette v. Roth*, 37 F.3d 257, 262 (7th Cir.1993), *citing Brecht*, 507 U.S. at 637–638, 113 S.Ct. 1710. The ultimate question is whether when viewed "in the context of the entire trial and the totality of the evidence, the jury heard substantial evidence to support the government's theory of prosecution." *Unit-*

ed *States v. Cueto*, 151 F.3d 620, 638 (7th Cir.1998).

The jury heard evidence adequate to support the government's prosecution. We agree with the state courts that the jury was made aware of all relevant and necessary factors to determine whether Walensky was worthy of belief. *See Savickas*, 171 Ill.Dec. 713, 594 N.E.2d at 1243. There was no need to have Cooley personally testify as to Walensky's efforts to get paid for changing his story; Walensky testified to that very fact, thus impeaching himself. And as for any discrepancy between Walensky and Cooley's testimony as to their past attorney/client relationship, such evidence is immaterial to the credibility of Walensky in this murder trial. The same is true of the insignificant discrepancies between Walensky's testimony of why he went to see Cooley.

The Confrontation Clause is not concerned with the minor minutiae of examination. Confrontation Clause issues most often arise in the context of cross-examinations. *See California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). In that context, courts have held that "so long as ... examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias," the Sixth Amendment is not compromised by any limits on that examination. *Cueto*, at 638–39.

Applying this standard, we conclude that the record establishes that Savickas was not unconstitutionally denied a chance to explore the true nature of the relationship between Walensky and Cooley. Since the jury had adequate information to assess Walensky's credibility, knowing full well he had attempted to solicit money in exchange for changing his testimony, the Sixth Amendment was not compromised by the non-production of Cooley's *personal* testimony as to other minor discrepancies which would have gone to credibility. "It is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer [a] point home to the jury." *United States v. Scott*, 145 F.3d 878, 888 (7th Cir.1998). Because we

---

**3.** The improper denial of a defendant's opportunity to confront a witness is subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 683–684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

find that the Illinois appellate court's application of these principles was neither contrary to nor an unreasonable applicable Supreme Court case law, we deny habeas relief on Savickas' Sixth Amendment claim.

## II. Conviction Based on Perjured Testimony

 Next, Savickas alleges that he is entitled to a new trial because his conviction was based on Walensky's perjured testimony. "In order to receive a new trial on the basis of the government's use of allegedly perjured testimony, the defendant must establish that: (1) the prosecution's case included perjured testimony; (2) the prosecution knew, or should have known, of the perjury; and (3) there is a likelihood that the false testimony affected the judgment of the jury." *Velarde v. United States*, 972 F.2d 826 (7th Cir.1992).

 Savickas alleges two instances of perjury. First, at trial, Walensky testified that Vinicky stood between him and Savickas and that he witnessed Savickas shoot Vinicky. However, at the subsequent civil deposition, Walensky testified that Savickas stood between him and Vinicky and that he heard, but did not see, the gun being shot. Second, at trial, Walensky testified that he retrieved a gun from behind the bar after the shooting. However, at the civil deposition, when first asked whether he had retrieved the gun from behind the bar, Walensky answered in the negative. Counsel immediately asked him the same question again, but the second question was objected to and Walensky never responded.

As to the first alleged instance of perjury, even if we were to assume that the discrepancy as to whether Walensky witnessed Savickas shoot Vinicky amounted to perjury, such false testimony could not have affected the judgment of the jury. As the Illinois appellate court noted, Savickas admitted to shooting Vinicky. The jury did not need to decide whether Savickas had in actuality shot the deceased—just whether Savickas shot Vinicky *in self defense*. As such, whether Walensky witnessed Savickas shoot Vinicky is immaterial and could not have affected the jury's judgment.

 As for Walensky's testimony regarding the gun, we agree with the state court's holding that such testimony was merely inconsistent and ambiguous—not perjurious. Savickas contends that the discrepancy concerning the gun was relevant because it could indicate that Vinicky possessed a gun. Specifically, Savickas asserts that if Walensky had not retrieved a gun from behind the bar after Vinicky was shot, Walensky must have removed the gun from Vinicky's body.

This theory is directly contradicted by all other relevant evidence presented at trial. David Chaplics corroborated Walensky's trial testimony by testifying that he observed Walensky grab a gun from behind the bar after the shooting. No evidence was introduced at trial that Vinicky possessed a firearm or that a gun was found near his body. Given the corroborating evidence, the lack of any testimony that Vinicky was holding a gun, and the ambiguity of Walensky's response to different questions, Walensky's statements were merely inconsistent and not false.

 Moreover, mere inconsistencies in testimony by government witnesses do not establish the government's *knowing* use of false testimony. *Magana*, 118 F.3d at 1191 ("We have repeatedly held, however, that mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."); *Thompson*, 117 F.3d at 1035, *quoting United States v. Payne*, 102 F.3d 289, 292 (7th Cir. 1996) ("Mere inconsistencies in testimony fall short of establishing perjury and most certainly do not establish that the government knowingly utilized perjured testimony.") Because Savickas can neither prove that Walensky offered perjured testimony nor that the government knowingly utilized false testimony, Savickas's claims fail to meet the requisite standard for overturning his conviction. Accordingly, the state court's decision was neither contrary to nor an unreasonable application of federal law.

## III. Improper Jury Instructions

 Finally, Savickas contends that the jury instructions given at his trial did not inform the jury about the proper burden of

proof. Where there is sufficient evidence of self-defense, the court must instruct the jury that the burden of proof falls on the State to negate self-defense beyond a reasonable doubt. *People v. Reddick*, 123 Ill.2d 184, 201, 122 Ill.Dec. 1, 526 N.E.2d 141, 148 (1988). While the trial court properly advised the jury of the burden of proof for both the first and second degree murder charges, the court never supplemented those instructions with the caveat that the State had to disprove self-defense beyond a reasonable doubt. Savickas claims that this is a constitutional error entitling him to habeas relief. Illinois law recognizes that improper jury instructions may constitute constitutional errors because they concern burdens of proof and elements of the offense, both essential to a fair trial. *See People v. Buckner*, 220 Ill. App.3d 468, 163 Ill.Dec. 151, 581 N.E.2d 102, 105 (Ill.App.1991) ("[E]rroneous instructions are substantial defects.... Although *Reddick* errors do not invariably mandate reversal or retrial ... [such] constitutional errors must be shown to be harmless beyond a reasonable doubt.")

■ Initially we note that the jury was never erroneously advised that it was the defendant's burden to prove self-defense. To the contrary, in its closing arguments the State acknowledged that it bore the burden to disprove self-defense. Under Illinois law, jury instructions may act in combination with closing arguments by counsel to apprise the jury that the State has the burden of disproving self-defense beyond a reasonable doubt. *See People v. Huckstead*, 91 Ill.2d 536, 545, 440 N.E.2d 1248, 1252, 65 Ill.Dec. 232, 235 (1982) ("[I]nstructions, in combination with the closing arguments by counsel for both sides, apprised the jury that the State had the burden of proving that the defendant was not justified in the force he used.") Having heard both court's instructions and the State's acknowledgment of its burden, the jury was well appraised of where the proper burden lay.

■ Even assuming that the trial court erred in failing to supplement the jury instructions,[4] Savickas is not entitled to habeas relief if this error was harmless. *Everette v. Roth*, 37 F.3d 257, 262 n. 17 (7th Cir.1993) (the harmless error standard announced in *Brecht* applies to instructional errors). Under the Supreme Court rule articulated in *Brecht v. Abrahamson*, the test for a harmless constitutional error "is whether the error 'had a substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 637, 113 S.Ct. 1710. This standard requires that the habeas Savickas establish that the trial error resulted in "actual prejudice." *Id.* In making this determination, the Court is to look at all of the evidence presented. *Jenkins v. Nelson*, 157 F.3d 485 (7th Cir.1998).

The record indicates that Savickas did not suffer actual prejudice. Other than his bald assertion that Walensky must have removed a weapon from Vinicky's body, Savickas presented no corroborating evidence of self-defense. Rather, Walensky's trial testimony as to his retrieval of the gun was consistent with Chaplics' testimony that Walensky grabbed the gun from behind the bar after the shooting. Other bar patrons also testified that they had not observed any firearms on or near Vinicky's body.

We find that any erroneous instructions were harmless error because the overwhelming evidence against Savickas more than justified the jury's first degree murder verdict under Illinois law. The lack of supplemental instructions could not have had a "substantial and injurious effect" on the jury's verdict. Thus, the appellate court acted reasonably in determining that the jury was unaffected by the lack of supplemental instructions. Considering their awareness of the burden of proof and the dearth of self-defense evidence on the record, the jury properly determined that Savickas was guilty of first degree murder beyond a reasonable doubt. Under such circumstances, even had the proper supplemental instructions been offered, Savickas's allegation that he acted in self-defense would

4. The Illinois Appellate Court recognized that the trial court failed to supplement its first and second degree murder instructions with instructions explaining to the jury that the State carried the burden of proof in disproving self-defense. *Savickas*, 230 Ill.App.3d at 332, 171 Ill.Dec. 713, 594 N.E.2d at 1240–1241.

have failed. Therefore, Savickas is not entitled to habeas relief.

## CONCLUSION

After careful consideration, the Court determines that Savickas' conviction did not violate the Constitution. The evidence of his guilt was overwhelming. In contrast, Savickas has offered uncorroborated theories of conspiracy and self defense that were properly rejected by the jury after a trial that did not violate any of Savickas' clearly established rights. These theories, which were insufficient to convince a jury, are ineffective on habeas review. Therefore, Savickas' petition for a Writ of Habeas Corpus is denied. The Clerk of the court is directed to enter judgment, pursuant to Fed.R.Civ.P. 58, against Savickas.